## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**DAVID AND CHRISTINE BENNETT;**                              **PLAINTIFFS**
**FREDDIE AND SUSAN MARSH; PANAN**
**TERRY; JIM AND MARTY GARLAND;**
**STEWARD AND LAURA CHEAK; DAVID**
**C. AND SANDRA A. POWELL; PHIL**
**AND JILL MCCONNELL; REX AND SHARON**
**JOHNSON; PHYLLIS BAIZE; BRUCE H. AND**
**PATTI A. BAKONY; RICHARD AND DEBORAH**
**SKASIC; AND SUSAN SUMNERS**

**v.**                              **CASE NO. 4:09cv00315 BSM**

**PLANNING COMMISSION, CITY OF BRYANT,**
**ARKANSAS, ET AL.**                              **DEFENDANTS**

### ORDER

Separate defendants Lance Penfield ("Penfield"), LCL Properties, LLC ("LCL"), Michael Sebren ("Sebren"), Jonathan Long ("Long"), Gary Hollis ("Hollis"), Kent Brunt ("Brunt"), Louis Kealer ("Kealer"), LaVenia Jones ("Jones"), David McCorkel ("McCorkel"), Rob Roedel ("Roedel"), Fred Foster ("Foster"), the City of Bryant Planning Commission ("Planning Commission"), and Doug Smith ("Smith") move for dismissal. [Doc. Nos. 2, 6, 12, 18]. Plaintiffs have responded. [Doc. Nos. 9, 10, 16, 20]. For the reasons set forth below, the motions are denied.

### I. ALLEGATIONS

Plaintiffs bring claims under 42 U.S.C. § 1983 alleging they were retaliated against and that their substantive and procedural due process rights as guaranteed by the Fifth and Fourteenth amendments were violated. The retaliation claims are brought against the

Planning Commission; Penfield (Chairman of the Planning Commission, and member and registered agent of LCL); Sebren, McCorkel, Long, Roedel, Foster, Hollis, Brunt, and Kealer (Commissioners of the Planning Commission); Jones (Planning Coordinator for Bryant); Smith (Code Enforcement Officer for Bryant); and LCL. The substantive and procedural due process claims are brought against the Planning Commission, Penfield, Sebren, McCorkel, Long, Roedel, Foster, Hollis, Brunt, and Kealer. Plaintiffs allege a civil conspiracy between Penfield and Jones, and bring a breach of contract claim against the Planning Commission, Penfield, Sebren, McCorkel, Long, Roedel, Foster, Hollis, Brunt, and Kealer, and LCL.

A. 42 U.S.C. § 1983 Claims

Plaintiffs own plats of land in the Andrew Hunter's Woods subdivision ("Hunter's Woods"). Hunter's Woods was created in 1993, and designated 23 separate lots. It is zoned R-2, residential-single family. The final plat of Hunter's Woods that was filed of record with the Saline County Circuit Clerk contained a bill of assurance. Specifically, the bill of assurance provided that "No lot shall be used except for residential purposes. . . . " and "No lot shall be subdivided . . ."

Directly south of Hunter's Woods is Tract C of the Westpointe Addition of the City of Bryant ("Tract C"). Tract C is zoned C-1, community commercial center. Tract C shares its northern boundary with the southern boundary of Lot 1 of Hunter's Woods ("Lot 1"). LCL acquired Tract C on August 27, 1997, and has since constructed commercial buildings on the lot.

LCL became owner of Lot 1 via a warranty deed filed of record on August 22, 2008.

The warranty deed provides that Lot 1 is "[s]ubject to existing . . . restrictions, of record, . . ." A survey was conducted at the direction of LCL on September 23, 2008 which allegedly subdivided Lot 1 into Lots 1A and 1B, and depicted a 16-space parking lot on Lot 1B.

At an October 13, 2008 Planning Commission meeting, LCL petitioned for the approval of subdividing, through replat, Lot 1 into Lots 1A and 1B, and for the approval of the replat of Tract C into Lots 1C and 2C. Charlie F. Best, the representative of LCL at the meeting and an engineer with Hurricane Valley, Inc., and Penfield testified that the purpose of the replat of Lot 1 was to allow for construction of a parking lot on Lot 1B. Penfield abstained from voting, and the Planning Commission unanimously passed the measures, approving the replat of Lot 1 and Tract C. On October 21, 2008 a plat showing Lot 1B and Lot 1C joined together to create a larger Lot 1C of the Westpointe Addition was filed of record. The plat has a "Certificate of Final Approval" dated October 13, 2008 and signed by Long. On November 20, 2008 LCL filed a "correction replat" which again showed Lot 1B and Lot 1C joined together to create a larger Lot 1C of the Westpointe Addition, and contained a "Certificate of Final Approval" signed by Long.

After obtaining approval from the Planning Commission for the replat of Lot 1 and Tract C, LCL petitioned the Planning Commission to re-zone Lot 1B from an R-2, residential-single family designation to a C-2, highway commercial district designation. The petition was placed on the agenda for the November 10, 2008 Planning Commission meeting, and set for public hearing on December 8, 2008. At the public hearing the Planning Commission tabled LCL's petition for future consideration. The petition for re-zoning has

3

yet to be addressed.

Based on the information above, plaintiffs allege that they were not given notice of or the opportunity to oppose LCL's petition for the subdivision of Lot 1.  This violated their procedural and substantive due process rights because the restrictions and covenants contained in the bill of assurance created property interests owned by plaintiffs.

A complaint was filed by plaintiffs in the Circuit Court of Saline County on December 22, 2008.  Following this filing, the Planning Commission announced its Comprehensive Growth Plan, which would re-zone Lots 1, 15, 17, and 18 in Hunter's Woods as C-2, highway commercial.  Also following the filing, Penfield and LCL removed approximately fifty (50) feet of a six-foot wooden fence that was located between Tract C and Lot 1.  Plaintiffs questioned Smith about the removal, presumably citing to Bryant Zoning Regulations 11(E)(9) and 12(D)(3) that mandate screening.  Regulation 11(E)(9) provides "When a [neighborhood commercial district] abuts a residential district, a minimum 6' high wood, rock or masonry fence is required with a landscape screen to buffer any [neighborhood commercial district] structure or activity from the residential district . . . " Regulation 12(D)(3) provides for the same screening requirement as 11(E)(9), but applies to highway commercial districts.  Smith responded that a privacy fence was not required by city regulations, and therefore a citation was not warranted.  Plaintiffs allege that the announcement of the Comprehensive Growth Plan and the removal of the fence constitute retaliation on the part of the Planning Commission, Penfield, and LCL.  Additionally, they assert that Smith aided and abetted Penfield and LCL in their retaliation by failing to cite

LCL for the fence removal.

B.    Civil Conspiracy Claims

Plaintiffs allege that sometime prior to October 13, 2008 Penfield and/or another representative or agent of LCL informed Jones of LCL's intention to subdivide Lot 1 into Lots 1A and 1B in an effort to re-zone Lot 1B a commercial designation.  Once Lot 1B obtained a commercial designation, LCL would construct a parking lot that would serve the two commercial buildings on Tract C.  Jones allegedly then advised Penfield and/or another representative or agent of LCL to replat Lot 1 in order for Lot 1B to be re-zoned.

Plaintiffs maintain that at the time of the Planning Commission's approval of the subdivision of Lot 1, Penfield and Jones had actual knowledge that plaintiffs had not received notice or an opportunity to oppose the replat.  Further, plaintiffs assert that at the time of the approval Penfield and Jones had at least constructive knowledge of the covenants and restrictions contained in the bill of assurance.  These actions constitute the basis for plaintiff's conspiracy claim.

C.    Breach of Contract

As stated above, the final plat for Hunter's Woods contained a bill of assurance that bound present and future property owners to various covenants and restrictions.  Specifically, the bill of assurance provided that "No lot shall be used except for residential purposes. . . . " and "No lot shall be subdivided . . ."  In petitioning the Planning Commission to replat Lot 1, plaintiffs allege that Penfield and LCL violated the bill of assurance.  In approving the replat of Lot 1 plaintiffs allege that, Sebren, McCorkel, Long, Roedel, Foster, Hollis, Brunt,

5

and Kealer violated the bill of assurance.  Additionally, plaintiffs argue that in their attempt to re-zone Lot 1B as highway commercial, Penfield and LCL are attempting to breach the bill of assurance.

## II.  MOTION TO DISMISS STANDARD

"Dismissal is proper where the plaintiffs' complaint fails to state a claim upon which relief can be granted." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing Fed. R. Civ. P. 12(b)(6)).  Accepting as true all of the factual allegations contained in the complaint, the court must review the complaint to determine whether its allegations show that the pleader is entitled to relief.  *Id.*  "The plaintiffs need not prove specific facts in support of their allegations, but they must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level."  *Id.* (internal citations omitted).

## III.  DISCUSSION

Defendants' motions to dismiss are denied.

A.  <u>Penfield and LCL Motion to Dismiss</u>

Penfield and LCL's motion to dismiss is based on an argument that the complaint fails to state facts sufficient to support plaintiffs' 42 U.S.C. § 1983 claims.  Penfield and LCL argue that decisions of municipal planning organizations do not give rise to 42 U.S.C. § 1983 claims. Without a valid § 1983 claim the civil conspiracy claim would not be supported by a tort, and therefore would fail.  Further, there would be no original jurisdiction on which supplemental jurisdiction for the breach of contract claim could be based.

For support, Penfield and LCL cite to *Chesterfield Development Corp. v. City of Chesterfield*, 963 F.2d 1102 (8th Cir. 1992).  In *Chesterfield*, a developer brought a § 1983 action arguing that its substantive due process rights were violated when the City of Chesterfield denied its petition for re-zoning.  963 F.2d at 1103.  The Eighth Circuit held that "[s]uch a claim is too typical of the run of the mill dispute between a developer and a town planning agency . . . to rise to the level of a due process violation."  *Id*. at 1104.  Further,

> Every appeal by a disappointed developer from an adverse ruling by a local . . . planning board necessarily involves some claim that the board exceeded, abused or "distorted" its legal authority in some manner . . . [i]t is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection."

*Id*.  Penfield and LCL also cite to a more recent case that they maintain further supports the dismissal of a due process claim relating to a zoning decision.  *See WMX Technologies, Inc. v. Gasconade County*, 105 F.3d 1195 (8th Cir. 1997).

In their response, plaintiffs first establish that the covenants and restrictions contained in the bill of assurance created a private property right.  "[E]quitable restrictions are real estate, part and parcel of the land to which they are attached and pass by conveyance."  *Chapman v. Sheridan-Wyoming Coal Co., Inc.*, 338 U.S. 621, 627 (1950).  Plaintiffs argue that once a private property right is established, the Fifth Amendment, applied to the states through the Fourteenth Amendment, prohibits its taking by the government for private purposes.  "[T]his court has many times warned that one person's property may not be taken for the benefit of another private person without a justifying public purpose . . . " *Thompson v. Consol. Gas Utilities Corp.*, 300 U.S. 55, 80 (1937).  Plaintiffs assert that the cases cited

by LCL and Penfield dealt with situations very different from that presented in the instant case. Specifically, *Chesterfield* addressed zoning, not the taking of a private property right. In *WMX Technologies* the issue was in fact not one of zoning, but of a city ordinance addressing solid waste management. Plaintiffs conclude that "the authority cited by the Defendants is not controlling because it is not on point."

The § 1983 claims asserted by plaintiffs are not simply zoning grievances of a developer. Instead, plaintiffs argue that private property rights created by a bill of assurance were taken from them for the benefit of another private party. The cases relied upon by defendants do not support the dismissal of plaintiffs claims. Plaintiffs have adequately stated their § 1983 claims. Therefore, there is support for a claim of civil conspiracy and a basis for supplemental jurisdiction over the breach of contract claim. Penfield and LCL's motion to dismiss is denied.

B.   Penfield, Brunt, Hollis, Jones, Kealer, Long, and Sebren Motion to Dismiss

In their motion to dismiss, Penfield, Brunt, Hollis, Jones, Kealer, Long, and Sebren argue, in pertinent part, that: (1) the Planning Commission is not subject to suit because claims cannot be brought against a department or subdivision of the city government; (2) plaintiffs' claims are not ripe because they have not first sought state remedies; (3) plaintiffs lack standing to bring a retaliation claim based on the comprehensive growth plan; and (4) the *Younger* Abstention Doctrine prevents this court from having jurisdiction.

*1. The Planning Commission Is Subject to Suit*

Defendants' first argument is that the Planning Commission is not subject to suit

because claims cannot be brought against a department or subdivision of the city government. To support their first argument, defendants cite to *Ketchum v. City of West Memphis*, 974 F.2d 81 (8th Cir. 1992). In *Ketchum*, the Eighth Circuit affirmed the district court's dismissal of the West Memphis Police Department and West Memphis Paramedic Services as defendants, stating that they were not "juridical entities suable as such . . . [t]hey are simply departments or subdivisions of the City government." 974 F.2d at 82. Defendants argue that the Planning Commission is not an entity separate from Bryant, but rather a subdivision of the city government, and therefore not a person or legal entity subject to suit under § 1983.

Plaintiffs respond that the capacity to sue or be sued is determined by the law of the state where the court is located. *See* Fed. R. Civ. P. 17(b)(3). Arkansas Code Annotated § 14-56-425 provides "In addition to any remedy provided by law, appeals from final action taken by the administrative and quasi-judicial agencies concerned in the administration of this subchapter may be taken to circuit court . . . " Plaintiffs specifically direct the court's attention to the phrase "In addition to any remedy provided by law," asserting that Arkansas law allows suits against planning commissions in federal court. Further, plaintiffs state that the action taken by the Planning Commission constitutes a final action. To support this they reference the two certificates of final approval signed by Long.

This court recently addressed the issue of whether a planning commission is a suable entity under § 1983. In *Gay v. City of Heber Springs*, No. 1:09CV00010, 2009 WL 1850530, at *1 (E.D. Ark. June 26, 2009), defendant City of Heber Springs Planning and Zoning

9

Commission sought dismissal claiming that it was not a suable legal entity under § 1983.

Supporting its argument the City of Heber Springs Planning and Zoning Commission cited

to the same cases used by the defendants in the instant case. *Gay*, 2009 WL 1850530, at *1.

In the order denying the motion to dismiss it was acknowledged that both Arkansas courts

and federal courts have allowed suits against Arkansas planning commission boards. *Id*.

"Moreover, Arkansas Code Annotated § 14-56-425 states that actions taken by planning

commissions may be appealed which results in their being a suable entity. Because planning

commissions may be sued, the Court will deny defendants' motion." *Id*. The Planning

Commission is a suable entity. Plaintiffs have adequately stated their § 1983 claims.

### 2. *Plaintiffs Are Not Required to First Exhaust Their State Remedies*

In their second argument, defendants maintain that plaintiffs' § 1983 claims are not

ripe, and therefore this court lacks jurisdiction. Defendants assert that a federal takings claim

does not become ripe until the claimant has sought state remedies. In *McKenzie v. City of*

*White Hall*, 112 F.3d 313, 317 (8th Cir. 1997), a physical takings case, the Eighth Circuit

stated that "the plaintiff must seek compensation from the state before proceeding to federal

court if adequate state procedures are available . . . [t]his is so because when the state

provides an adequate process for obtaining compensation, no Fifth Amendment violation

occurs until compensation is denied." Defendants also cite to *Collier v. City of Springdale*,

733 F.2d 1311, 1316-17 (8th Cir. 1984), which provides

> The Arkansas Constitution guarantees just compensation for private property
> appropriated or damaged for public use by governmental entities. . . . the
> availability of these state law mechanisms precludes finding that the taking of

10

[plaintiff's] property was in violation of a right, privilege or immunity secured
by the Constitution of the United States . . .

Plaintiffs respond that the cases cited by defendants are inapposite because they involve government taking for public use, while the plaintiffs herein allege a taking for the benefit of a private party. Plaintiffs again cite to the United States Supreme Court decision in *Thompson* in which the Court held that private property "may not be taken for the benefit of another private person without a justifying public purpose." 300 U.S. at 80. Although not binding on this court, they present support for their contention that restrictive covenants are constitutionally protected property rights by citing to a Seventh Circuit opinion in which that court held that the vacation of protective covenants was a taking for a private purpose violating the Takings Clause. *Daniels v. Area Plan Comm'n of Allen County*, 306 F.3d 445, 459 (7th Cir. 2002). Finally, plaintiffs point to *Samaad v. City of Dallas*, a case in which the Fifth Circuit held that "plaintiffs' failure to seek compensation for the alleged taking of their property for a private purpose does not render that claim unripe." *Samaad v. City of Dallas*, 940 F.2d 925, 936-37 (5th Cir. 1991). Plaintiffs assert that the Eighth Circuit has relied on *Samaad*, and therefore there is no requirement that plaintiffs exhaust state remedies before setting forth claims involving takings for private purposes.

Courts have struggled over whether takings for private purpose claims require a claimant to first seek remedy through state procedures. This endeavor requires courts to square two competing cases: *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496 (1982) and *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson*

*City*, 473 U.S. 172 (1985). *Patsy* addressed the exhaustion of state remedies when bringing a § 1983 claim. "[E]xhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." *Patsy*, 457 U.S. at 516. In *Williamson County*, a case involving a regulatory government taking, the Court held, "[i]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson County*, 473 U.S. at 195.

Plaintiffs are correct that defendants cite only to cases involving takings for public purpose, and therefore their discussions of whether state remedies must first be pursued are inapposite. Attention must be turned to cases involving takings for private purposes, or for the benefit of a private party. In their reply, defendants correctly point out that the Seventh Circuit case cited by plaintiffs in their response, *Daniels*, supports the conclusion that like claims of takings for public purpose, claims of takings for private purpose must first seek state remedy. " . . . Takings Clause litigants must first take their claim to state court even when plaintiffs . . . are alleging a taking for a private purpose." *Daniels*, 306 F.3d at 453. In reaching this conclusion the Seventh Circuit relies heavily on *Williamson County*. While this is the case, it appears that the Eighth Circuit disagrees with the Seventh Circuit.

In *McKenzie*, the claim was not that the property was taken for a private purpose, but rather that the property was taken without a justifiable public purpose. 112 F.3d at 316. While *McKenzie*, like many of the other cases contained in the pleadings, is not entirely on point, the language adopted by the Eighth Circuit provides direction on the issue presented

12

herein.  For instance, the Eighth Circuit provided that "[t]he McKenzies need not pursue state procedures for a claim that the City took the privacy buffer without a justifying public purpose, however, because this is a Constitutional violation even if compensation is paid." *Id*. at 317.  The Eighth Circuit then cited *Samaad* in providing that "plaintiffs' failure to seek compensation for the alleged taking of their property for a private purpose does not render that claim unripe."  940 F.2d at 937.

In its most recent case regarding a taking for private purpose, *Dhalen v. Shelter House*, No. 09-1909, 2010 WL 1050411, at * 3 (8th Cir. March 24, 2010), the Eighth Circuit acknowledged its holding in *McKenzie* and reliance on *Samaad*.  In *Dhalen* the court held that if the plaintiffs could show that the taking was in fact a private taking, then state remedies need not be pursued, and their claim would be ripe for adjudication in federal court. *Dhalen*, 2010 WL 1050411, at *4.  In the instant case there is no contention that the taking was public and not private.

Plaintiffs are correct that they are under no obligation to first seek state remedies. This court properly has jurisdiction.

### 3. Plaintiffs Have Standing

Defendants' third argument is that plaintiffs lack standing to bring the retaliation claims.  They cite to *Berry v. City of Little Rock*, 904 F.Supp. 940, 945 (E.D. Ark. 1995), in which this court stated that " . . . for a plaintiff to satisfy the Article III standing requirement, he/she must pass a three-pronged test:  first, the plaintiff must have suffered an 'injury in fact' . . . "  The court in *Berry* held that to meet the "injury-in-fact" prong, the injury must,

among other things, be "likely to occur, not merely speculative . . . the injury must either be actual or imminent." 904 F.Supp. at 945. Defendants assert that Bryant's proposed comprehensive growth plan is only a proposed plan, and there is no evidence to show that the plan will be adopted. Thus, plaintiffs' injury is merely speculative, and the claim of retaliation must be dismissed.

In their response, plaintiffs point to the motion to dismiss standard as well as the elements of a § 1983 action. The comprehensive growth plan was announced for public comments on April 13, 2009. Although the injury has not yet occurred, the possibility of the injury is beyond mere speculation. Plaintiffs have adequately stated a claim for retaliation based on the comprehensive growth plan.

### 4. *Younger Abstention Doctrine Does Not Apply*

Defendants' argument that *Younger v. Harris*, 401 U.S. 37 (1971), requires abstention regarding plaintiffs' breach of contract claim is moot. Plaintiffs filed a motion for voluntary dismissal in the state court proceeding and an order was entered dismissing the complaint on June 10, 2009. Plaintiffs breach of contract claim therefore may proceed. The motion to dismiss brought by Penfield, Brunt, Hollis, Jones, Kealer, Long, and Sebren is denied.

C.   <u>McCorkel, Roedel, Foster, and Bryant Motion to Dismiss</u>

In their motion to dismiss McCorkel, Roedel, Foster, and Bryant present arguments nearly identical to those set forth in the motion to dismiss brought by Penfield, Brunt, Hollis, Jones, Kealer, Long, and Sebren. For the reasons stated above, their motion to dismiss is denied.

14

D.      Smith Motion to Dismiss

Smith maintains that he would have reached the same decision on whether or not to issue LCL a citation regardless of plaintiffs' state court proceeding.  This is because the zoning regulations that plaintiffs claim LCL violated do not apply to LCL.  Smith maintains this is so, because:  (1) the requirement of a fence applied to commercial property, and the property on which the fence was located is residential; and (2) the construction of the commercial structure was approved years before the Bryant Zoning Regulations went into effect, so the screening requirements are not applicable.

According to Smith, the two regulations cited by plaintiffs, Bryant Zoning Regulations 11(E)(9) and 12(D)(3), do not apply to the property on which the fence was located.  The fence was located on Lot 1, which is zoned R-2, residential-single family.  The two regulations apply to highway commercial and neighborhood commercial zoned property.  Therefore, no regulation was violated when LCL took the fence down.

Plaintiffs respond that they have never represented that the screening requirement applies to residential property.  Rather, the fence on the residential property "served to fulfill" the screening requirement of the adjacent commercial property.  The offending property, plaintiffs maintain, is in fact the commercial property, not the residential property.

Smith further asserts that because the commercial structures on Lot C were site approved two years prior to the adoption of the current zoning regulations, the screening requirement is inapplicable.  For support, Smith cites the introductory paragraph to the zoning regulations and § 1.D. of the zoning regulations.  The introductory paragraph states

15

that "[t]hese zoning regulations apply to all zoning requests and subdivision preliminary plat submissions not currently on the Planning Commission agenda as of 3/8/99 and all subdivision final plats submitted for approval 30 days after these zoning regulations are approved by the Bryant City Council."   Section 1.D. states "Effective Date.   These regulations shall become effective on the date the Bryant City Council approves this document by ordinance."

In response, plaintiffs maintain that although the site plan for Lot C was approved two years prior, the commercial structure that triggered the screening requirement was built in 2001.   Plaintiffs argue that the date of the construction of the commercial structure is what is important.   They cite to § 4(C)-(D) of the zoning regulations:

> (C)     No building or structure or part thereof shall hereafter be erected, constructed, reconstructed, moved, or structurally altered unless in conformity with all of the regulations herein specified for the zoning district in which it is located.
>
> (D)     No building or other structure shall hereafter be erected or altered that does not comply with all conditions of the zoning district.

Plaintiffs also cite the same language cited by Smith in the introductory paragraph.   With emphasis on the language addressing "all subdivision final plats," plaintiffs argue that the certificate for final approval for the replat of Lot 1 and Lot C was received well after the 30 day safe harbor, and therefore the regulations apply.

At this point in the litigation, it is difficult to determine whether the regulations at issue apply to LCL.   Based on what plaintiffs have submitted, it is entirely possible that a citation was indeed warranted.   Smith's motion to dismiss is therefore denied.

IV. CONCLUSION

Accordingly, defendants' motions to dismiss [Doc. Nos. 2, 6, 12, 18] are denied.

IT IS SO ORDERED this 31st day of March, 2010.

_____
UNITED STATES DISTRICT JUDGE